DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VICTOR HERMAN CREECH III** and **KATHRYN CREECH,**
Appellants,

v.

**JOSEPH SANTOMASSINO** and **MICHAEL P. KENNY, JR.,**
Appellees.

No. 4D2024-0279

[October 23, 2024]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Daniel A. Casey, Judge; L.T. Case No. CACE21-016005.

Kansas R. Gooden and Jennifer A. Karr of Boyd & Jenerette, P.A., Miami, for appellants.

Nicholas A. Shannin and Carol B. Shannin of the Shannin Law Firm, P.A., Orlando, for appellees.

MAY, J.

The defendants in an auto negligence case appeal an order granting the plaintiff's motion for leave to amend to assert a claim for punitive damages.[1] The defendant driver argues the evidence did not demonstrate a reasonable basis for the recovery of punitive damages. We agree and reverse.

The defendant was driving a truck into an intersection when he allegedly struck a golf cart driven by the plaintiff. The parties dispute who had the green traffic signal at the time of the accident and who hit whom. The plaintiff alleges the crash occurred due to the defendant driver reading a text message from his wife while driving into the intersection.

The plaintiff filed a negligence complaint against the driver and the wife. During the defendant driver's deposition, he admitted he was at the intersection where the accident occurred when he heard an audible text message. "I looked down and that's -- the time I looked down, I saw that it was [my wife] texting

---

[1] Both the defendant driver and his wife filed the notice of appeal, but the plaintiff alleged the punitive damages claim against the defendant driver only. The defendant driver's wife owned the truck. For ease of reference, this opinion will refer primarily to the defendant driver in the singular.

me." "I looked down and looked back up but I was not looking down when I realized that he had hit me." He admitted it was unreasonable and reckless for a driver to text while operating a motor vehicle.

After the deposition, the plaintiff sought leave of court to amend his complaint to assert a claim for punitive damages. In support, the plaintiff proffered that the defendant driver was intentionally operating his vehicle in violation of section 316.305(3)(a), Florida Statutes (2020), with a "conscious disregard and indifference to life. . . ." The plaintiff also proffered a prospective unsworn witness statement that the defendant driver was "weaving in and out of lanes, [and] trying to pass other vehicle[s]. . . in a 'reckless manner' and that the [defendant] driver drove through a red light without stopping before the collision."

The plaintiff also provided orders from other circuit courts granting leave to amend in cases involving texting and driving, a "scientific report" concluding that drivers using a cell phone pose an equal or greater danger than drunk drivers, and a "scientific study" summarizing available data on the dangers of texting while driving.

The defendant driver responded that the allegations did not rise to the level of gross negligence or manslaughter but were instead simple negligence allegations. He relied on his answers to interrogatories that he had not responded to the text message but looked down quickly when he heard a sound and realized someone had run into the front passenger side of his truck.

At the hearing on the motion to amend, the plaintiff argued the defendant driver drove in a reckless manner while swerving in and out of traffic at a high speed. The plaintiff maintained the defendant driver drove recklessly and was texting. The plaintiff argued the defendant driver's conduct constituted gross negligence and that he was aware it would be reckless to operate a vehicle while texting. The defendant driver responded that, even as alleged, his conduct did not rise to the level for punitive damages.

The trial court orally granted the motion. The trial court found, "the [p]laintiff has proffered sufficient evidence that the [d]efendant[ driver's] conduct was so reckless or wanton in care that it constituted a conscious disregard or indifference for the life, safety or rights of persons exposed to such conduct." The court also relied on the fact that the accident occurred on Halloween and during the Boat Show when traffic was extremely heavy. The court found a reasonable basis for recovery of punitive damages "both under the intentional misconduct prong, . . . [and] under the gross negligence prong . . . ." The trial court subsequently entered its written order granting the motion.

The defendant now appeals.

2

We have de novo review of an order on a motion for leave to amend to assert a claim for punitive damages. *Pinnacle Prop. Mgmt. Servs., LLC v. Forde*, 372 So. 3d 292, 295 (Fla. 4th DCA 2023) (citation omitted).

Section 768.72(1), Florida Statutes (2020), provides:

> In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure.

§ 768.72(1), Fla. Stat. (2020); *see also Globe Newspaper Co. v. King*, 658 So. 2d 518, 519 (Fla. 1995).

> [A] "reasonable showing by evidence" of "a reasonable basis" for punitive damages means the movant must demonstrate the movant will be able to produce competent, substantial evidence at trial upon which a rational trier of fact could find that the defendant specifically intended to engage in intentional or grossly negligent misconduct **that was outrageous and reprehensible enough to merit punishment**.

*Fed. Ins. Co. v. Perlmutter*, 376 So. 3d 24, 33–34 (Fla. 4th DCA 2023) (emphasis added).

Section 768.72 further provides (in relevant part):

> (2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:
>
> (a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.
>
> (b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

§ 768.72(2), Fla. Stat. (2020).

3

> "[P]unitive damages are reserved for truly 'culpable conduct,' where the conduct is so outrageous in character, and so extreme in degree … [that] the facts [of the case] to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

*Perlmutter*, 376 So. 3d at 36 (citations omitted). The "required level of negligence for punitive damages is equivalent to the conduct involved in criminal manslaughter." *Forde*, 372 So. 3d at 296 (citation omitted).

When determining whether to grant leave to amend, the trial court must "make a preliminary determination of whether a reasonable jury, viewing the totality of proffered evidence in the light most favorable to the movant, could find by clear and convincing evidence that punitive damages are warranted." *Perlmutter*, 376 So. 3d at 34. "[T]he trial court considers the evidence presented by all parties and gives the movant the benefit of all reasonable inferences." *Id.* (citation omitted).

> [O]nce the trial court determines the proposed amended complaint states sufficient allegations to plead a proper punitive damages claim, the trial court must next determine whether the movant has established a reasonable factual basis for its punitive damages claim consistent with the allegations in the amended complaint. If the evidentiary showing does not match the amended complaint's allegations, the trial court should not permit the punitive damages claim.

*Id.* at 32 (citations omitted).

Finally, as part of the trial court's "gatekeeping" function, a trial court must deny a motion to amend "if the opposing party's conduct is not alleged or shown by a proper *pretrial* evidentiary showing to be sufficiently reprehensible and outrageous to merit punitive damages." *Id.* at n.4 (emphasis in original).

The defendant driver argues the complaint contains allegations of mere negligence, or a run-of-the-mill automobile accident. He argues the plaintiff then alleges the intentionality or gross negligence of his actions in a conclusory fashion. He points out that a violation of section 316.305's prohibition on texting while driving is non-criminal in nature, even with multiple violations of the statute.

Because the complaint did not sufficiently allege conduct to support punitive damages, the defendant driver maintains our inquiry should stop there. The

4

defendant driver then argues the plaintiff's proffer was likewise insufficient and the complaint's allegations and the proffered evidence do not match.

The plaintiff responds that "[r]eading a text while driving into a busy intersection, particularly when driving into a busy intersection following a crowded event, is precisely the type of behavior that may give rise to a claim for punitive damages." He suggests the record and proffer "amply" satisfied the requirements to assert a claim for punitive damages.

We agree with the defendant driver. The record shows the defendant driver glanced down at his phone but did not read or respond to his wife's text despite the plaintiff's allegations to the contrary. Thus, the evidentiary showing/proffer and the complaint's allegations do not match.

This case is similar to *Mercer v. Saddle Creek Transp.*, 389 So. 3d 774, 776 (Fla. 6th DCA 2024). There, the plaintiff sued a driver and his employer for negligence and later sought punitive damages against the driver. *Id.* The plaintiff proffered, in part, dashcam footage which she alleged showed the driver using his cell phone in foggy and smoky conditions a few seconds before the crash. *Id.* The trial court granted the motion to amend, reasoning that the dashcam video showed the driver "*handling his cell phone—not just holding it in a static position*—before the crash." *Id.* (emphasis added).

The Sixth District reversed, noting that although the driver appeared to violate federal regulations, "mere use of a cell phone while driving a truck" does not automatically provide a reasonable basis for a plaintiff to seek punitive damages. *Id.* at 778. Rather, "[t]here must be some additional act that shows the cell phone usage was reckless or a conscious disregard of or indifference to others to show gross negligence under section 768.72(2)(b)." *Id.* In short, the Sixth District concluded, "all cell phone use is not equal." *Id.*

Here, the defendant driver's brief glance at his cell phone is not an "active engagement" or "handling" of a cell phone. No "additional act" occurred suggesting that the cell phone usage was reckless. While the defendant driver's actions might be arguably negligent, they do not rise to the level of gross negligence or intentional misconduct needed to assert a claim for punitive damages. *See, e.g., Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 706 (Fla. 4th DCA 2023). So too, the prospective witness's unsworn affidavit fails to support the plaintiff's alleged punitive damage claim.

*Reversed and remanded.*

KLINGENSMITH, C.J., and CIKLIN, JJ., concur.

\* \* \*

5

*Not final until disposition of timely filed motion for rehearing.*